```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
SECURITIES AND EXCHANGE COMMISSION,     :
                        Plaintiff,      :    00 Civ. 108 (DLC)
                                        :
              -v-                       :    OPINION AND ORDER
                                        :
MILAN CAPITAL GROUP, INC., et al.       :
                        Defendants.     :
                                        :
----------------------------------------:
                                        :
AARON R. MARCU, as Receiver for MILAN   :
CAPITAL GROUP, INC.,                    :
                        Cross-Claim     :
                        Plaintiff,      :
                                        :
              -v-                       :
                                        :
IRA A. MONAS, et al.,                   :
                        Cross-Claim     :
                        Defendants.     :
                                        :
----------------------------------------X
```

APPEARANCES

For the Plaintiff:

Michael J. Roessner
100 F. Street, N.E., Mail Stop 5275
Washington, DC 20549


For the Defendant:

Alan S. Fellheimer
Fellheimer & Eichen LLP
45 Rockefeller Plaza 20th Floor
New York, NY 10111

James P. Sammon
Dubyak Connick Sammon Thompson & Bloom LLC
3401 Enterprise Parkway, Suite 205
Cleveland, OH 44122

DENISE COTE, District Judge:

Defendant Jason M. Cope ("Cope") has moved to alter the outstanding judgment amounts against him, as to disgorgement and prejudgment interest. For the reasons explained below, the motion is denied.

BACKGROUND

This is the latest iteration in a case stretching back almost fifteen years. A more complete recounting of the underlying facts can be found in this Court's prior decisions in SEC v. Milan Capital Group, Inc., et al., No. 00 Civ. 108 (DLC), 2000 WL 1682761 (S.D.N.Y. Nov. 9, 2000) ("Milan I"), and in SEC v. Milan Capital Group, Inc., et al., No. 00 Civ. 108 (DLC), 2001 WL 921169 (S.D.N.Y. Aug. 14, 2001) ("Milan II").

In brief, in early 2000, the U.S. Securities and Exchange Commission ("SEC") brought this action against five defendants: Milan Capital Group, Inc. ("Milan"), Ira A. Monas ("Monas"), Cope, Michael Lamhut ("Lamhut"), and Investment Offices d/b/a AC Financial, Inc. ("AC Financial"). The suit alleged, inter alia, that the defendants perpetrated a fraud by which they received funds from investors to purchase shares in initial public offerings but did not make the purchases.

In an Opinion of November 9, 2000, the Court granted the SEC's motion for partial summary judgment against Monas, Lamhut,

2

and Cope.  Cope was represented by counsel and opposed summary judgment.  The Court found each defendant liable for securities fraud and for aiding and abetting Milan's violation of the broker-dealer registration requirements.  Milan I, 2000 WL 1682761, at *6-*8.  Specifically, the Court found that Cope had played a central role in the fraud; he personally solicited customers and was responsible for the supervision of the other brokers offering the aforementioned shares.  Id. at *6.  The Court also stated that permanent injunctions would be entered against these defendants, and that both full disgorgement and prejudgment interest were appropriate, with the amount of disgorgement to be determined after the conclusion of an investigation by the Receiver for Milan.  Id. at *9-*10.

On December 29, 2000, a permanent injunction was entered against Monas, Lamhut, Cope, and AC Financial (which had defaulted).  Cope appealed but later abandoned his appeal, which was dismissed by the Second Circuit for failure to prosecute. See Milan II, 2001 WL 921169, at *2.

On December 15, 2000, the Receiver filed under seal a lengthy report summarizing his investigation thus far.  As relevant here, the Receiver found that, during the fraud, Milan took in, as gross revenue, at least $8,370,680 from at least 200 investors.  The Receiver also found that, during this same period of time, Milan returned approximately $2,356,271.78 to investors.

3

A letter summarizing most of the report's findings, but withholding personal information, was served on all defendants.

In June 2001, the SEC moved for entry of a judgment against Cope and other defendants. The SEC sought $8,370,680 in disgorgement, which it explained was the amount that defendants "took in" from investors. Cope did not oppose the motion.

In an Opinion of August 14, 2001, Milan,[1] Monas, Cope, and AC Financial were found to be jointly and severally liable for $8,370,680 in disgorgement, $1,024,386.67 in prejudgment interest, and $854,316.61 in fees and costs to the Receiver (as well as future costs and fees incurred by the Receiver), for a total of $10,249,383.28. Cope and Monas were also found to be jointly and severally liable for a statutory penalty of $10,000,000. Milan II, 2001 WL 921169, at *2-*4 (S.D.N.Y. Aug. 14, 2001).[2] As per the terms of the partial final judgment entered against him on August 15, 2001, Cope was required to pay $20,249,383.28, plus post-judgment interest ("August 2001 Judgment").

According to the SEC's accounting, as of the date of the August 2001 Judgment, the Receiver had recovered from the

---

[1] The Receiver, on behalf of Milan, had stipulated to Milan's liability in 2001, thus obviating the need for summary judgment practice.

[2] Lamhut was not included as he had died sometime after summary judgment was entered.

defendants $5,124,780.61, of which $42,935.77 came from Cope. Those funds were first applied against the Receiver's fees and costs, and then put towards the disgorgement and prejudgment interest.  The August 2001 Judgment was not satisfied, and thus post-judgment interest began to accrue on the outstanding portion of the August 2001 Judgment.

Between August 2001 and February 2011, the Receiver recovered from the defendants and relevant third parties an additional $645,219.39, of which Cope's only contribution was $22,531.10.  These recovered funds were put towards post-judgment interest first and then the outstanding portion of the August 2001 Judgment.  As of August 29, 2013, Cope's balance on the August 2001 Judgment was $22,916,312.90, the disgorgement component (including prejudgment and post-judgment interest) of which was $7,808,261.75.  See SEC v. Milan Capital Grp., Inc. et al., No. 00 Civ. 108 (DLC), 2013 WL 6462233, at *1 (S.D.N.Y. Dec. 10, 2013) ("Milan III").

Cope did not appeal the August 2001 Judgment.  And this case was almost entirely dormant from 2002 to 2012.

During that time, Cope made no payments towards the August 2001 Judgment.  In June 2013, after the SEC took discovery and advised Cope that it would be filing a motion for civil contempt, Cope paid the SEC $20,000.

On October 9, 2013, the SEC moved to hold Cope in civil

contempt for violating the August 2001 Judgment.  Specifically, the SEC contended that Cope had failed to make a meaningful effort toward payment of the approximately $7.8 million disgorgement judgment, despite having the ability to do so.

Cope's opposition questioned, <u>inter alia</u>, how much remained outstanding on the judgment.  Asserting that "a great deal of evidence, information, and money" had been found since the August 2001 Judgment, Cope noted that the Receiver had not disclosed the monetary value of recoveries from the co-defendants after the August 2001 Judgment.  Relatedly, Cope filed, on November 4, a motion for an accounting, stating that the public docket does not disclose the exact amount of the Receiver's recoveries since the August 2001 Judgment, including recovery from the estate of Monas, who had since died.  The SEC did not oppose the accounting request, and offered to provide Cope informally with any additional documentation Cope desired.  In Cope's reply memorandum, he stated that he "understands that he cannot collaterally attack the judgment entered by this Court in 2001" and reiterated that his argument focuses on "the myriad of facts that were derived by the Government, subsequent to the 2001 judgment."

Accordingly, in an Order of December 10, 2013, a contempt hearing was scheduled for February 2014.  Additionally, expedited discovery was ordered in advance of the hearing.  <u>See</u> <u>Milan III</u>,

6

2013 WL 6462233, at *2.

At the February 21, 2014 contempt hearing, Cope testified on his own behalf. He admitted the essential elements of contempt, namely that he was aware of the August 2001 Judgment and could have paid more towards it. As reflected in Orders of February 21 and February 28, Cope was found to be in civil contempt. At the hearing, Cope and the SEC reached an agreement on how Cope might purge himself of that contempt, and the publicly filed Order of February 28, which is partially redacted, memorializes their agreement.

As relevant for present purposes, during the hearing, Cope's counsel raised again the concern about what amount the Receiver had recovered since the August 2001 Judgment. Counsel stated his belief that the disgorgement number was "incorrect" "particularly in light of everything that has occurred," noting a repayment to investors. Counsel continued:

> I think, at the time when this Court made its decision, it made it with all of the information that was before it, but I believe the government, the SEC particularly, and you know, possibly the FBI in the Monas case and everything became aware of a lot more that actually makes that number much more accountable, much more finite, and actually not an unknowing number that it could have been in 2001.

At the conclusion of the hearing, the parties agreed to meet and confer on the issue of the total amount of the judgment due and owing.

7

On May 16, Cope filed the present motion, styled as a "Motion To Determine the Proper Outstanding Judgment Amounts (Disgorgement and Prejudgment Interest)." The motion was fully submitted as of June 11.

DISCUSSION

Cope and the SEC essentially agree on the amount the Receiver has recovered from the defendants in the periods before and after the entry of the August 2001 Judgment.[3] As a result, instead of using this motion practice to resolve any dispute regarding the extent of the Receiver's recoveries -- as Cope had represented he would be doing -- Cope has changed course. Cope has used this motion to attack the August 2001 Judgment. Cope's motion will therefore be treated as a motion for relief under Rule 60(b), Fed.R.Civ.P. Cope's motion is denied, as untimely and for its failure to meet the high bar necessary to warrant Rule 60(b) relief.

Cope's motion consists of two principal arguments concerning figures in the August 2001 Judgment. He contends that (1) the ~$8.3 million disgorgement amount should have been reduced by the

---

[3] Cope's opening motion argues at length that the Receiver's recoveries from Lamhut, third parties, and relief defendants were not credited against Cope's judgment. The SEC's calculations, however, credit him for these payments. Indeed, both Cope and the SEC rely on a materially identical table of recoveries by the Receiver. In his reply, Cope concedes this point.

~$2.3 million that Milan returned to investors during the course of the fraud; and (2) prejudgment interest should have been calculated against a smaller principal amount.[4]  Both arguments constitute requests for relief from a judgment pursuant to Rule 60(b), Fed.R.Civ.P.

Because Rule 60(b) "provides an exception to finality," United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260, 269, (2010) (citation omitted), it is appropriate to begin with basic principles of finality and the related concept of res judicata. As the Supreme Court explained over thirty years ago (and in so doing, summarized doctrine well over a century old):

> A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. Nor are the res judicata consequences of a final, unappealed judgment on the merits altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another

---

[4] Cope's opening papers appeared to also challenge the joint-and-several liability determination.  Cope argued that that Cope's disgorgement judgment must be limited to the amount of "his ill-gotten gains," or it would be impermissibly punitive.  He also alleged that the SEC had never properly identified his ill-gotten gains.  Cope, however, has abandoned these arguments in his reply.

Relatedly, Cope's reply challenges the SEC's accounting regarding the Receiver's fees and costs.  Cope made no such challenge in his opening papers.  Accordingly, this argument shall not be addressed.  See In re Harris, 464 F.3d 263, 268 n.3 (2d Cir. 2006).  In any event, to the extent that Cope believes that he has identified a discrepancy, it is likely attributable to interest, which Cope consistently fails to include in his calculations.

>  case. . . . [A]n erroneous conclusion reached by the
>  court in the first suit does not deprive the defendants
>  in the second action of their right to rely upon the
>  plea of res judicata.  A judgment merely voidable
>  because [it is] based upon an erroneous view of the law
>  is not open to collateral attack, but can be corrected
>  only by a direct review and not by bringing another
>  action upon the same cause of action. . . . [T]he
>  indulgence of a contrary view would result in creating
>  elements of uncertainty and confusion and in
>  undermining the conclusive character of judgments,
>  consequences which it was the very purpose of the
>  doctrine of res judicata to avert.

Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398-99 (1981) (citation and emphasis omitted).

Furthermore, "no general equitable doctrine . . . countenances an exception to the finality of a party's failure to appeal . . . ." Id. at 400.  As the Court explained,

>  [s]imple justice is achieved when a complex body of law
>  developed over a period of years is evenhandedly
>  applied.  The doctrine of res judicata serves vital
>  public interests beyond any individual judge's ad hoc
>  determination of the equities in a particular case.
>  There is simply no principle of law or equity which
>  sanctions the rejection by a federal court of the
>  salutary principle of res judicata.

Id. at 401 (citation and emphasis omitted).  Additionally,

>  public policy dictates that there be an end of
>  litigation; that those who have contested an issue
>  shall be bound by the result of the contest, and that
>  matters once tried shall be considered forever settled
>  as between the parties. . . . [T]he doctrine of res
>  judicata is not a mere matter of practice or procedure
>  inherited from a more technical time than ours.  It is
>  a rule of fundamental and substantial justice, of
>  public policy and of private peace, which should be
>  cordially regarded and enforced by the courts. . . .
>  And the mischief which would follow the establishment
>  of precedent for so disregarding this salutary doctrine

>against prolonging strife would be greater than the benefit which would result from relieving some case of individual hardship.

Id. at 401-02 (citation and emphasis omitted).

As an exception to these finality principles, Rule 60(b) allows a party to seek relief from a judgment and sets forth six distinct bases for granting such relief:

>(b) Grounds for Relief from a Final Judgment, Order, or Proceeding.
>
>On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
>(1) mistake, inadvertence, surprise, or excusable neglect;
>
>(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
>(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
>(4) the judgment is void;
>
>(5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
>(6) any other reason that justifies relief.

Rule 60(b), Fed.R.Civ.P.

"Properly applied Rule 60(b) strikes a balance between serving the ends of justice and preserving the finality of judgments." In re Terrorist Attacks on September 11, 2001, 741

F.3d 353, 357 (2d Cir. 2013) (citation omitted).  "Relief under Rule 60(b) is generally not favored . . . ." Ins. Co. of N. Am. v. Pub. Serv. Mut. Ins. Co., 609 F.3d 122, 131 (2d Cir. 2010) (citation omitted).  "Rule 60(b) provides a mechanism for extraordinary judicial relief available only if the moving party demonstrates exceptional circumstances." Motorola Credit Corp. v. Uzan, 561 F.3d 123, 126 (2d Cir. 2009) (citation omitted). "In no circumstances, though, may a party use a Rule 60(b) motion as a substitute for an appeal it failed to take in a timely fashion."  Stevens v. Miller, 676 F.3d 62, 67 (2d Cir. 2012).

Relatedly, Rule 60(c) sets forth the time limitations for Rule 60(b) motions.  Any motion under Rule 60(b) "must be made within a reasonable time," and a motion under subsections (1), (2), or (3) must be made "no more than a year after the entry of the judgment or order or the date of the proceeding."  Rule 60(c), Fed.R.Civ.P.  In determining "reasonableness," the court "look[s] at the particular circumstance of each case and balance[s] the interest in finality with the reasons for delay. Notably, a Rule 60(b)(6) motion requires extraordinary circumstances, which typically do not exist where the applicant fails to move for relief promptly." Grace v. Bank Leumi Trust Co., 443 F.3d 180, 190 n.8 (2d Cir. 2006) (citation omitted). Additionally, when a Rule 60(b) motion constitutes a motion for reconsideration -- i.e., it contends that the Court overlooked

12

certain matters or controlling decisions -- it must be made within fourteen days under Local Civil Rule 6.3 for the Southern District of New York.

Cope's motion is untimely under any measure.  By contending that the figures in the August 2001 Judgment were incorrect, Cope's motion falls under Rule 60(b)(1), as he is seeking relief due to alleged "mistake[s]" by this Court.  See United Airlines, Inc. v. Brien, 588 F.3d 158, 175 (2d Cir. 2009).  Such relief is barred, however, as Cope missed the one-year limitation on motions filed under Rule 60(b)(1).  See Rule 60(c), Fed.R.Civ.P.

Classifying Cope's motion under any of the other subsections of Rule 60(b) would not assist him.  To begin, none of the other subsections apply.  Subsections (3) and (4) are plainly inapplicable.  Subsection (2), which is based on new evidence, is inapplicable as Cope's motion relies entirely on evidence that was before this Court when it entered the August 2001 Judgment -- in particular, the Receiver's December 15, 2000 report.[5]

---

[5] Cope contends that, because the December 15, 2000 report was sealed, it was not available to him.  If Cope did not have a copy of the report in 2000, he was free to make an application to review it.  It was a matter of public record that a report by the Receiver had been filed under seal. Moreover, Cope -- who was represented by counsel at the time -- was apparently served with a copy of a December 20, 2000 letter from the Receiver, in which the Receiver referred to the sealed December 15, 2000 report and summarized its findings.  Cope's failure to act diligently to apply to review the sealed December 15, 2000 report cannot convert this report into "new evidence" for purposes of Rule 60(b)(2), Fed.R.Civ.P.

13

Subsection (5) is unavailable because the August 2001 Judgment was a "money judgment[]," which has no "prospective application." DeWeerth v. Baldinger, 38 F.3d 1266, 1275 (2d Cir. 1994). And subsection (6) is unavailable because "[w]here a party's Rule 60(b) motion is premised on grounds fairly classified as mistake, inadvertence, or neglect, relief under Rule 60(b)(6) is foreclosed." Stevens, 676 F.3d at 67.

Even if Cope's motion were not barred by the one-year time limitation imposed on a Rule 60(b)(1) motion, Cope's motion nevertheless would be barred because he has not brought it within a "reasonable time." Rule 60(c), Fed.R.Civ.P. The present motion was filed thirteen years after the entry of the August 2001 Judgment, and Cope has not justified his delay. Cope's motion is precisely the "substitute for an [untimely] appeal" that Rule 60(b) does not permit. Stevens, 676 F.3d at 67.

In any event, even were this Court to look past the untimeliness issues and consider Cope's motion on the merits, Cope has failed to demonstrate the existence of "extraordinary" circumstances that would warrant Rule 60(b) relief. Cope's principal argument is that the ~$8.3 million disgorgement award was incorrect because it was calculated on defendants' gross revenue from the fraud, and not their profits. As the Receiver noted in the December 15, 2000 report, Milan took in approximately ~$8.3 million from investors over the course of the

14

fraud and, during that same period of time, returned approximately ~$2.3 million to investors.  Thus, defendants' profit from the fraud was ~$6.0 million.  Cope contends that calculating the disgorgement amount on gross revenue and not profit was an error of law.

To be sure, courts frequently refer to the capture of the wrongdoer's "profit" as the object of the disgorgement remedy.  See, e.g., SEC v. Contorinis, 743 F.3d 296, 301 (2d Cir. 2014) ("Because disgorgement is not compensatory, it forces a defendant to account for all profits reaped through his securities law violations and to transfer all such money to the court, even if it exceeds actual damages to the victim." (citation omitted)).  It is equally true, however, that the Second Circuit has explained that while courts "sometimes refer casually" to disgorgement as depriving wrongdoers of "profits," "where the profits from fraud and the defendant's ill-gotten gains diverge," disgorgement may be calculated on the defendant's "revenues instead of profits."  FTC v. Bronson Partners, LLC, 654 F.3d 359, 375 (2d Cir. 2011).  For example, "it is well established that defendants in a disgorgement action are not entitled to deduct costs associated with committing their illegal acts."  Id. (citation omitted).  One of the costs associated with running a Ponzi scheme or similar frauds may be the return of some revenue to investors.  Consequently, Cope's contention that disgorgement

15

cannot be calculated on gross revenue fails to meet the high bar of demonstrating "extraordinary" circumstances to warrant Rule 60(b) relief.

Cope's only remaining argument is a challenge to the ~$1.0 million prejudgment interest figure. Much of this challenge assumes that Cope has succeeded in reducing the disgorgement figure from ~$8.3 million to ~$6.0 million, which he has not done. The remainder of Cope's challenge is based on the contention that sums collected by the Receiver before the judgment was entered should have further reduced the principal on which the interest was calculated. In support, Cope refers to SEC v. Razmilovic, 738 F.3d 14, 36-37 (2d Cir. 2013). The Court of Appeals in Razmilovic explained that prejudgment interest should be calculated on the amount of funds of which a defendant had use, and not those frozen by court order. Id. at 36.

Even if Razmilovic were of assistance to Cope, "a mere change in decisional law does not constitute an extraordinary circumstance for purposes of Rule 60(b)," with limited exceptions. In re Terrorist Attacks, 741 F.3d at 357 (citation omitted); see also United Airlines, Inc. v. Brien, 588 F.3d at 176. Such is the import of finality in our civil justice system. And this is not an exceptional case. Accordingly, Cope has failed to demonstrate the existence of "extraordinary" circumstances that would warrant revising a thirteen-year old

16

judgment.

CONCLUSION

Defendant Jason Cope's May 16, 2014 motion is denied.

SO ORDERED:

Dated:   New York, New York
         June 23, 2014

                                   _____
                                              DENISE COTE
                                      United States District Judge

17